422 P.2d 534

**Myrtle F. CHRISTENSEN, Plaintiff and Appellant,**

v.

**Harold Elwood CHRISTENSEN, Defendant and Respondent.**

**No. 10696.**

Supreme Court of Utah.

Jan. 17, 1967.

Glenn W. Adams, Ogden, for appellant.

Clyde C. Patterson, Ogden, for respondent.

HENRIOD, Justice.

Appeal from a divorce decree. Affirmed, with modification. No costs awarded.

Mrs. C., 60, and Mr. C., 67, were married for a baker's dozen months. The dove of peace dropped the olive branch soon after the honeymoon, during which the bride paid her own expenses,—a new concept perhaps born of the new insistence that women must be paid the same salaries as their darlings. Mr. C. hit Mrs. C. over the head with a large package of kitchen cleaner called Babo,—hardly an appropriate instrumentality to cleanse a soiled marital wardrobe. *She* did a thing or two also that prompted the trial court to conclude that both parties had grounds for divorce. Being of a more cavalier bent than defendant, he graciously awarded the divorce to Mrs. C.

Four points were assigned on appeal: That the trial court erred 1) when it did not transfer the case to a different judge when Mrs. C. filed an affidavit of prejudice, 2) changed the written stipulation of the parties with a) respect to a property settlement in lieu of alimony, b) defendant's failure to object to its terms in his pleadings or otherwise, on any grounds, including fraud, duress, or misrepresentation; 3) thus abusing the court's discretion; and 4) in refusing to accept plaintiff's proffer of proof.

As to 1), the affidvait of prejudice: All of the issues in the case were tried, except alimony or division of property, which were continued to see if the parties could get together, reserving until later the determination of this aspect of the case for final judgment. The motion to change judges simply recited prejudice because the judge "was personally acquainted with the plaintiff and had knowledge of her business transactions and her past personal life." It appears that counsel misinterpreted some language the judge had

used, and counsel for plaintiff, with commendable utmost candor, conceded in his brief, that the affidavit was filed upon (a) "The Court's determination to reject the stipulation without pleadings or testimony attacking it, (b) *together with a misunderstanding of plaintiff's counsel in a conversation* had with the court (that) prompted the plaintiff to file her affidavit of prejudice." It is suggested that with respect to (a), if the trial court blindly followed the terms of the stipulation, he really may have evidenced a prejudice in the other direction, since he has no obligation to accept it, but only must examine it and honor it with considerable respect,[1] then to weigh the equities with discretion and judgment that are acceptable on appellate review, unless there be an odor of caprice floating around, completely offensive to the nostrils of the robed individuals upstairs. That is not this case, so that (a) above is no reason to justify the use of the affidavit *near the end of the case,*—although there might be a case where prejudice so permeated the air as to justify use of the jurat to perfume it. With respect to (b), it is obvious that the reason assigned has no subtance, since concededly it was bottomed on misunderstanding. Consequently, there *is no reason or specificity,* assigned in the affidavit that would comply with Rule 63(b), Utah Rules of Civil Procedure, which requires that "Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists." This, we take it, means reasonable reasons. We detect nothing in the record, either before or after the affidavit, evincing any rancor of any kind on the part of the trial court, but contrariwise, only the application of what we believe to have been sound legal principles. We think Anderson v. Anderson,[2] is not applicable under the facts of this case.

■■ As to 2), re-changing the stipulation of the parties: This urgence is a gratuity. The trial court did not *change* the stipulation,—he *ignored* it. Doing so, he did not act in excess of or without jurisdiction,—nor, we think,—in abuse of discretion. The fact that Mr. C. did not claim fraud, duress, etc. in his pleadings certainly could be no angle-iron around the neck of a trial judge that would preclude exercise of discretion in charting and documenting the equities of the case and its belligerent combatants. Otherwise, parties by written stipulation could make a vegetable out of a trial judge by simple silence. Generally, the law "ain't worked thataway."

As to 3), abuse of discretion: This point is pretty much noosed by the observations in the next preceding paragraph.

---

1. Madsen v. Madsen, 2 Utah 2d 423, 276 P.2d 917 (1954); Hall v. Hall, 111 Utah 263, 177 P.2d 731 (1947).

2. 13 Utah 2d 36, 368 P.2d 264 (1962).

■ As to 4), proffer of proof: The proffer was a) as to show the premium on an annuity contract that would assure Mrs. C. $80 per month, the amount of social security she lost by marrying Mr. C., and b) what she spent of the $5,000 Mr. C. had stipulated to and paid her,—which stipulation the court ignored. Simple answer to a) is that such proof assumes that Mrs. C. is entitled to alimony, will not remarry, that she will not die before the mortality tables predict, that Mr. C., seven years her senior, will outlive her, and that she did not know that she would have to forego the government payment which was created by a previous husband, when she sought the arms of her lover, without knowing of his propensity for laying on the head of a female, not hands, but Babo cans,—all so speculative as to be of little use in a divorce action in settling property rights. The answer to b) is that the amount she spent of the money received under a stipulation which the court ignored, is completely immaterial.

■ The evidence indicated that Mrs. C. had about $68,000 worth of property, one piece producing monthly revenue. Mr. C. had $5,000 in savings,—the only reason for this appeal,—plus a fireman's pension, social security benefits and a $100 a year income from a four and one-half-acre piece of land with little value because of an abundance of salt grass in reverse proportion to an almost complete lack of water. His monthly income was less than $250.

We cannot but conclude that the trial court committed no error in its distribution of assets, or in the exercise of its discretion,—except for one minor item.

■ In appealing from the decree, counsel for Mrs. C. included refusal of the court to award her attorney's fees. She prevailed in this action. A cursory examination of this record reflects counsel's gentlemanly conscientious presentation of her cause, who performed services that reflect an entitlement of at least $500. In equity and good conscience, it appears that $500 for the use of her attorney would not be unreasonable. However we return the case to the trial court to take evidence as to attorney's fees which is really his prerogative.

CROCKETT, C. J., and ELLETT and TUCKETT, JJ., concur.

CALLISTER, J., concurs in the result.